```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE WESTERN DISTRICT OF OKLAHOMA

 3

 4   UNITED STATES OF AMERICA,

 5           Plaintiff,

 6   vs.                          Case No. CR-20-307-JD

 7   JUSTIN BIGGS,

 8           Defendant.

 9   ----------------------------

10

11                TRANSCRIPT OF ELECTRONICALLY RECORDED

12                   HEARING ON PRETRIAL RELEASE

13                BEFORE THE HONORABLE GARY M. PURCELL

14                  UNITED STATES MAGISTRATE JUDGE

15                       SEPTEMBER 6, 2022

16                         11:12 A.M.

17

18

19                         APPEARANCES

20   FOR THE GOVERNMENT:  Ms. Julia E. Barry, Assistant United
     States Attorney, United States Attorney's Office, 210 W. Park
21   Ave., Suite 400, Oklahoma City, OK 73102

22
     FOR THE DEFENDANT:  Mr. William H. Bock, Attorney at Law, 6402
23   N. Santa Fe, Suite A, Oklahoma City, OK 73116

24
     Proceedings recorded by digital recording; transcript produced
25   by computer-aided transcription.
```

*Tracy Thompson, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

2

```
 1          (PROCEEDINGS HAD ON SEPTEMBER 6, 2022.)

 2              THE COURT:  The Court calls the case of United States

 3  of America vs. Justin Biggs.  This is CR-20-307-JD.  Ms. Barry

 4  is here for the United States.  Mr. Bock appears along with the

 5  defendant.  The matter comes on pursuant to a petition for

 6  action on conditions of pretrial release filed on August 28,

 7  2022.  That would be Document Number 24.  This may be

 8  repetitious, but we're going to go over it for the purpose of a

 9  full and preliminary record.

10      Sir, is your legal name Justin Biggs?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Just be seated there.  That will be fine.

13              MR. BOCK:  I'm sorry, Your Honor.

14              THE COURT:  If you'll speak into the microphone, that

15  will help.

16      That's your legal name?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  How old are you?

19              THE DEFENDANT:  40 years old.

20              THE COURT:  And do you know how to read and write the

21  English language?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Are you a citizen of the United States?

24              THE DEFENDANT:  I am.

25              THE COURT:  Have you had any difficulty understanding
```

1  anything that you've read concerning this matter that was

2  written in English and anything you've heard said in English

3  concerning this matter?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  You have a right to be represented by

6  counsel.  In that regard, I have entered Mr. Bock's name as

7  your retained counsel of record.  Is that your desire?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  You're entitled to have him with you at

10 all court proceedings, line-ups in which you participate that

11 are conducted by law enforcement, and at any interrogation or,

12 in other words, questioning of you by law enforcement.  Do you

13 understand that?

14           THE DEFENDANT:  Yes, I do, Your Honor.

15           THE COURT:  Furthermore, you're entitled to meet with

16 him to get his advice and consultation before these things

17 occur.  Do you understand?

18           THE DEFENDANT:  I understand.

19           THE COURT:  Have you been presented with a copy of

20 the petition for actions on conditions of pretrial release?

21           THE DEFENDANT:  Yes, I have.

22           THE COURT:  Did you read it and did you understand

23 it?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Do you need me to read it to you?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  As I think I explained to you last week

3   when I met you, you have a right to a hearing in this matter

4   that is a proceeding today, if necessary, in which it is the

5   burden of the government of the United States to prove by clear

6   and convincing evidence that you violated a condition of

7   release or, by a probable cause, that you committed a federal,

8   state, or local crime while under the conditions of release.

9   And it is their burden that there is no condition or

10  combination of conditions that will assure you will not flee or

11  pose a danger to the community or you're unlikely to abide by

12  any condition or combination of conditions of release.  In such

13  event, the Court will order you detained.  If the government

14  fails in this burden, the Court may continue you on the present

15  conditions of release or modify those conditions.  Do you

16  understand?

17          THE DEFENDANT:  I understand.

18          THE COURT:  Again, the record is reminded of the

19  Brady disclosure obligation that I think I announced last week

20  on the record, and it is reminded of that again at this time.

21      Do you have any questions about anything we've talked

22  about?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Mr. Bock, does your client admit or deny

25  the allegations set forth in the petition?

1          MR. BOCK:  Your Honor, he would admit that the burden

2   of proof in this courthouse would be able to be met at a

3   hearing that we would have.  And therefore, he does not contest

4   the charges in this courtroom today.

5          THE COURT:  And he does not deny the allegations at

6   this time?  He will not present any evidence of denial; is that

7   correct?

8          MR. BOCK:  That is correct.

9          THE COURT:  Is there any record you wish further from

10   the defendant?

11          MS. BARRY:  No, Your Honor.  That's sufficient.

12          THE COURT:  You may make an offer of proof for the

13   record, please.

14          MS. BARRY:  Certainly, Your Honor.

15      The United States was prepared to call Officer Dillon

16   Dennis today, who would testify that on the night of August

17   27th, 2022, he was dispatched to 332 North Bradbury Drive in

18   Edmond, Oklahoma.  He encountered victim Lindsey Biggs in

19   extreme pain, having difficulty breathing, with the left side

20   of her face swollen, markings on her neck, and an indication

21   that she had been physically assaulted by Mr. Biggs on that

22   evening.  Officer Dennis would also testify that he noticed a

23   strong odor of alcohol on Mr. Biggs's breath when Mr. Biggs was

24   finally arrested and that upon interviewing Lindsey Biggs at

25   the hospital, he learned that she had been assaulted by her

1    husband, Justin Biggs, stemming from an argument about her

2    grandmother having lived with them in the home.

3           (PAUSE IN PROCEEDINGS.)

4           THE COURT:  Very well.  Based upon the fact that the

5    Court finds that the defendant admits that the United States

6    can sustain its burden at this proceeding and he does deny the

7    allegations for the purpose of this proceeding only, it is the

8    finding of the Court at this time that based upon the factual

9    basis, which I hereby find adequate, and the findings of fact

10   necessary therewith, it is the finding of the Court at this

11   time that the government has sustained its burden of proof by

12   clear and convincing evidence that while on release, in

13   violation of paragraph number 7(l) of the order setting

14   conditions of release entered on September 16th, 2020, the

15   defendant failed to not use alcohol at all and that there is

16   probable cause to believe the defendant committed a federal,

17   state, or local crime while on release in violation of

18   paragraph 1 of the order setting conditions of release entered

19   on December 16th, 2020.

20       I further find -- well, at this time, based upon those

21   findings, initially I will hear argument from the government

22   regarding its position, if any, as to what the Court should

23   consider doing.

24           MS. BARRY:  Your Honor, the United States would agree

25   with the probation office in this case and request detention

```
 1   given the seriousness of the charges, which are set forth in
 2   more detail in the Edmond Police Department reports.  Mr. Biggs
 3   has had several encounters with the law and specifically
 4   relating to strangling his wife in the presence of their minor
 5   children.  This is the second time that he has been arrested
 6   for such conduct.  And given the nature of those charges as
 7   well as the fact that he was drinking on this occasion, the
 8   United States believes that there are no combination of
 9   conditions that will ensure the safety of the community,
10   including his wife, child, and Mr. Biggs himself, or his
11   presence at future hearings given his flight, especially from
12   the situation on August 27th.
13           THE COURT:  Mr. Bock.
14           MR. BOCK:  May I argue at the podium?
15           THE COURT:  Wherever you're more comfortable.  In the
16   COVID days, we're kind of lax on where we all stand and sit.
17           MR. BOCK:  Judge, Justin Biggs is 40 years old.  He
18   has been under federal -- well, he didn't make them indict him.
19   He pled guilty back in December of 2020.  He was put on
20   supervised release and, Judge, he has been perfect while on
21   supervised release.  I certainly don't want to disrespect
22   the --
23           THE COURT:  Now, let me make sure I understand.  He
24   has pled guilty to a federal matter and has been found guilty
25   and was given probation --
```

```
 1              MR. BOCK:  No, sir.

 2              THE COURT:  -- or was it super- --

 3              MR. BOCK:  This is supervised -- this is supervised

 4   release.

 5              THE COURT:  So he served some -- a term in --

 6              MS. BARRY:  No, Your Honor.  I'm sorry.  He has

 7   already pleaded guilty.  The co-defendants are awaiting trial.

 8   His sentencing has been postponed.

 9              THE COURT:  Okay.  So he has not been sentenced?

10              MS. BARRY:  Correct.

11              MR. BOCK:  No, he has not been sentenced.

12              THE COURT:  So when you say --

13              MR. BOCK:  So if I said that, I'm sorry.  He pled.

14              THE COURT:  Well, it's the difference between state

15   vernacular and federal vernacular.  They're trying to revoke

16   his conditions of release.  He's presently before this Court

17   out on conditions of release.

18              MR. BOCK:  Correct.

19              THE COURT:  So instead of revocation, the words we

20   would use is violations of supervised -- of conditions of

21   release.  Now you've got me saying it.  I understand.  He's on

22   conditions of release --

23              MR. BOCK:  He is on conditions of release.

24              THE COURT:  -- subject to further --

25              MR. BOCK:  And, Your Honor --
```

1          THE COURT:  -- sentencing before Judge Palk (sic).

2          MR. BOCK:  Yes.  And, Your Honor, although the

3     allegations that we're here for today -- and I'm certainly not

4     trying to disrespect the level of the complaint in this matter,

5     but I do think, in that regard, we've admitted what has

6     happened and -- at least for this courthouse.

7          In that regard, though, if we're going to look at the

8     totality of Mr. Biggs, he has been a model citizen, to be quite

9     frank.  He's employed.  And, Your Honor, I don't know if you

10    want me to do it in terms of a proffer, but I'd rather just

11    tell you that I've got a couple of witnesses who would testify

12    here today.  One is his boss.  His name is Eric Taylor.  He is

13    sitting in the front row.

14         Mr. Biggs makes about 750 to $1,000 a week, far less than

15    what he was doing when he was out earning a living being a

16    landman.  He's humble, but he works every day.  They share an

17    office, Your Honor.  He has not seen him drinking, quite the

18    opposite.  He comes -- if Mr. Taylor was called to testify, he

19    would tell you that he's a rock star of their business, that he

20    comes every day.  He works 8 to 5, 8 to 6, 8 to 7.  He leaves

21    and takes care of his children, takes them to all their

22    sporting events and that sort of thing, and so Mr. Taylor has

23    developed a friendship with him also.  But he would testify

24    that he goes to court -- he goes to work every single day,

25    five, six days a week, and is humble and he has not noticed

1    any, you know, drinking during the day or anything of the sort.

2              THE COURT:  And these are -- he did all these things

3    while he was living with his wife; correct?

4              MR. BOCK:  Yes.

5              THE COURT:  Go ahead.

6              MR. BOCK:  Yes.  We also have Mr. and Mrs. Biggs,

7    which would be Kym and Kim Biggs.  Judge, they're spelled

8    differently.  One is K-I-M and one is K-Y-M, but both his

9    parents' name are Kim.  And they would testify not about the

10   occurrence that we're here for today but generally that

11   their -- unfortunately, their son's house has been volatile

12   over the last several years and that both husband and wife have

13   been volatile with each other.  And if called to testify,

14   Ms. Biggs would tell you that Lindsey Biggs has attacked her

15   within the last couple of months.

16       I only say that to you, not to hurt anybody, Judge, but to

17   paint a picture that this is an anomaly.  And what we need to

18   do is keep him out of the house, keep him with a no-contact

19   order, keep him employed, increase alcohol testing, have him

20   live with his mom and dad and have zero contact with Lindsey so

21   that he can continue to provide for his family, so that he can

22   continue to help his lawyer prepare for the case, so that he

23   can -- it's open in the public, Your Honor.  He's testifying on

24   behalf of the government in this case.  We can meet pretrial.

25   His -- the trial in this case is not set until February.

1      And, Your Honor, I'm not asking anybody to feel sorry for
2  anybody --
3           THE COURT:  So it's fair to say -- I want to make it
4  plain on the record that we're talking about conditions of
5  release that were -- that were basically longer than we usually
6  anticipate.  Is that fair to say?
7           MS. BARRY:  That's correct, Your Honor --
8           MR. BOCK:  Yes, Your Honor.
9           MS. BARRY:  -- given the co-defendants' terms of
10  their -- the way the case has moved forward, yes.
11           MR. BOCK:  Judge, things boiled over.  And, I mean, I
12  can't make light of it, nor do I need to misdirect it.  The
13  household is not a happy household, and they don't need to be
14  together.  And they don't need to be together by law, and they
15  don't need to be together factually.
16      He's got a place to -- and if Mr. and Mrs. Biggs were
17  called to testify, they would tell you that they live east
18  of -- they live east, out by Lake Arcadia, in a gated
19  community.  It can be safe.  And Justin can mind the rules.  He
20  can show this Court that -- Your Honor, there are conditions --
21  there are conditions in this case.  He's not going anywhere.
22  He's pled before this Court.  He's paid a million-dollar
23  settlement in a civil case that's not related to -- it's
24  related, but he didn't pay it as part of a fine in this
25  courthouse, to be clear.  But Mr. Biggs is not going anywhere.

1   He doesn't have anywhere to go.

2           THE COURT:  How far is -- are the -- do the parents

3   live from where the children reside, approximately?

4           THE DEFENDANT:  15 minutes drive.

5           MR. BOCK:  15 minutes.

6           THE COURT:  At 80 miles an hour, that's so far, and

7   10 miles an hour -- how far is it?

8           MR. BOCK:  One's out -- it was --

9           THE COURT:  Help us, Dad.

10          UNIDENTIFIED FEMALE:  Five miles.

11          UNIDENTIFIED MALE:  Five miles.

12          THE COURT:  That's what I need to know.  The children

13  live with the mother and it is anticipated they will continue

14  to do that?

15          MR. BOCK:  Yes, Your, Honor, although I'm not going

16  to represent him in any family matters.  I don't want to

17  misspeak, but --

18          THE COURT:  I understand.  But for now, what you know

19  in front of me -- my concern, obviously, is keeping these two

20  people apart.  And it will be primarily -- well, solely his

21  responsibility to see to it that that occurs.

22          MR. BOCK:  Yes, sir.

23          THE COURT:  Do you understand what I mean?  And if I

24  do that, I want to make sure I understand all the parameters.

25  How many children are there?

1          MR. BOCK:  Two.

2          THE COURT:  How old are they?

3          MR. BOCK:  Eight and five.

4          THE COURT:  Close enough.  There's no agreement or no

5    presentation you have at this time about how, if he is

6    released, he would see his children?

7          MR. BOCK:  No, Your Honor.  I can tell you, though --

8    I was getting ready -- in my notes, I was getting ready to get

9    to the fact.  And I don't anticipate that Mr. Adams is going to

10   be representing Ms. Biggs in a family matter, but Mr. Adams,

11   Scott Adams, represented Ms. Lindsey Biggs in a civil case

12   where we were co-counsel -- we were on the same team.  I've

13   contacted -- he has been in contact with Lindsey Biggs.

14   Lindsey does -- I can make a pro -- an offer to the Court based

15   on my conversations with Mr. Adams that Lindsey does not object

16   to him getting out, but she certainly objects to him coming

17   home and being around her.  And so --

18         THE COURT:  Her.

19         MR. BOCK:  Yes.  And so what I would anticipate is he

20   would get out.  I'm hoping they get some sort of a custody

21   situation temporarily and can get a third party to help with

22   visitation.  But I've told him, Your Honor, that no matter

23   what, he can't communicate with Lindsey or we can only do it

24   however the Court tells us to.

25         THE COURT:  Does anyone have any evidence that he's

1  ever -- were the children exposed to this?

2          MR. BOCK:  I believe that the children -- the

3  allegation is that they were there the night in question in

4  this case.

5          THE COURT:  Okay.  What else?

6          MR. BOCK:  Your Honor, I'm not going to repeat

7  myself.  There certainly are children -- there are children at

8  stake.  There's safety of the community.  My legal issues here,

9  obviously, are danger to the community and flight risk.  Judge,

10 he's not going anywhere.

11         THE COURT:  I agree with that.  I'm more concerned

12 about danger to the community.

13         MR. BOCK:  And danger to the community, there are

14 conditions that are pretty simple in this situation because

15 what the long time has given us, it's given us a transparent

16 look that he has been a law-abiding citizen.  He's been doing,

17 honest to gosh, Judge, close to perfect.  And living in this

18 household that's not too happy -- because the pressure in a

19 situation like that, Judge -- just being a lawyer for a family

20 that's going through it, it is brutal.  And I'm not making any

21 excuses, but sometimes things go south, and it went south in a

22 bad way.  And -- but it's fixable in that he's not -- he's not

23 dangerous to anybody else that he doesn't have those feelings

24 for.  And if we could keep him away or keep those two parties

25 away from each other, it ensures -- it ensures safety for

1    everybody and it keeps things as copacetic as possible.

2        We don't know whether a trial would even be in February.

3    If Mr. Dyer asked for a continuance, it could go to March,

4    April, May, June, and that's through no fault of my client.  He

5    would be sitting there.  And, Judge, this is an opportunity for

6    him to prove to everybody that he's worth it.

7        And, Judge, I would ask on his behalf that you allow him

8    to be released with a change -- some additional conditions,

9    whether that be alcohol monitoring -- I know that there's -- I

10   would leave that up to the U.S. Probation Office, but I happen

11   to know about devices you can get on an iPhone that have

12   breathalyzers where it can go off and they randomly do it

13   during the days.  He's willing to do any of that, Your Honor.

14   He's willing to wear an ankle monitor to show you that he's

15   going from work and to -- to his place of employment.

16       I would ask if that's going to be the case, that he

17   still -- if he sees his children -- he's very active and he

18   does take them to all their -- he's the only one who takes them

19   to their sporting events, him and the grandparents.  Ms. Biggs

20   has not been -- she's not prone to take them to the practices

21   and whatnot.  So I would only ask that if he's allowed to

22   release -- be released, that he be monitored on ankle and that

23   if he's monitored by ankle at home, that we get some latitude

24   with some traveling so long as we can document what it's for.

25            THE COURT:  I understand.  Government have anything?

```
1              MR. BOCK:  Thank you, Your Honor.
2              MS. BARRY:  I would just add that Judge Dishman has
3    been very clear that the February trial date is not moving but
4    that it's set in stone.  So I don't anticipate it moving --
5              THE COURT:  And this is another matter that's not
6    directly related with what's before the Court.
7              MS. BARRY:  That is correct, Your Honor.  I'm
8    referring to the trial at which Mr. Biggs is expected to
9    testify on behalf of the United States.
10             THE COURT:  And is it fair to say his sentencing is
11   delayed till that happens?
12             MS. BARRY:  That is absolutely correct.
13             THE COURT:  Anything else on record regarding that?
14             MS. BARRY:  No, Your Honor.
15        (PAUSE IN PROCEEDINGS.)
16             THE COURT:  I'm really at a loss.  Some cases are
17   very difficult to ensure all the people involved do what
18   they're supposed to do.  I will tell you this, though, that you
19   don't want to see me again.  I'm going to go ahead and impose
20   conditions.
21        It's the finding of the Court at this time -- well, no,
22   before I do that, maybe I'm imposing on people that don't want
23   to be imposed on.  I'm going to informally direct my attention
24   to the parents of the defendant.
25        Are you willing for him to live with you?
```

```
1              UNIDENTIFIED MALE:  Yes, Your Honor.
2              THE COURT:  Does your home have any firearms in it?
3   And do you -- or let me just put it broadly.  Do you have any
4   problem with your home being inspected --
5              UNIDENTIFIED MALE:  No, sir.
6              THE COURT:  -- by pretrial services for adequacy and
7   acceptability and approval for him to live there?
8              UNIDENTIFIED MALE:  No, sir.  That's fine.
9              THE COURT:  Do you have a problem, either one of you,
10  with being required to be in attendance at all times of any
11  visitation he has with his children?  And I say "visitation."
12  I don't want to make this a divorce case.  As far as I'm
13  concerned, he can do whatever he wants to with his children.
14  If they want to come to your house and spend the night, if they
15  want to go to a movie, whatever, but I want him monitored.
16             UNIDENTIFIED MALE:  Yes, sir.
17             THE COURT:  Do either one of you object to one of you
18  being present at all times when he is with -- physically with
19  his children?
20             UNIDENTIFIED MALE:  I'll accept that responsibility.
21             THE COURT:  Okay.  Therefore, based upon that, it is
22  my finding at this time that in addition to the previous
23  findings made -- and I will include those to be clear and
24  convincing evidence while on release and in violation of
25  paragraph 7(l), he failed to not use alcohol, also that there
```

```
 1   is probable cause that he committed a federal, state, or local
 2   crime in violation of those conditions.
 3        I further find that the defendant has rebutted the
 4   presumption that no condition or combination of conditions will
 5   assure the defendant will not pose a danger to the safety of
 6   any other person and the community.  And I further find that
 7   there are conditions in my mind of release that will assure the
 8   defendant will not flee or pose a danger to the safety of any
 9   other person or the community and that I believe the defendant
10   will abide by those conditions.
11        Therefore, the government's petition for action on
12   conditions of pretrial release filed on August 28th, 2022, is
13   sustained to the extent that the previous order setting
14   conditions of release is amended to include conditions that the
15   defendant is to avoid all contact, direct or indirect, with one
16   Lindsey Dawn Biggs and the defendant is to be monitored as
17   deemed appropriate by pretrial services office or supervising
18   officer for the use of alcohol.  And he's to pay for the
19   expenses of that -- I assume those are in the previous
20   conditions of release -- and to use such a program that
21   specifically monitors whether he's used any alcohol at all.
22   And he is to reside solely with his parents in their home and
23   abide by the home rules.
24        Let me tell you the truth.  I'm just going to tell you.
25   If they weren't here sitting here supporting you, you wouldn't
```

```
 1  be leaving.  So whatever you do, you go to their home, however
 2  unreasonable their rules are, you've got to satisfy the rules
 3  of their house.
 4            THE DEFENDANT:  Yes, Your Honor.
 5            THE COURT:  Because that's why you're out.  If they
 6  want to go to bed at eight o'clock, guess what time you're
 7  ready for bed?  Is that clear?
 8            THE DEFENDANT:  Yes, Your Honor.
 9            THE COURT:  You may be -- and this isn't a divorce
10  proceeding or visitation for children.  I'm concerned that your
11  children may have witnessed some of this or whatever is going
12  on there, and I don't want them exposed to that under my order.
13  So I'm going to allow you to see your children just as much as
14  you can or everyone agrees to, subject to any other court.  I
15  don't know if you're going to get a divorce.  I don't know
16  what's going to happen.  But as far as I'm concerned, you can
17  see your children all you want to, however you want to see
18  them, wherever you want to see them, as long as you don't
19  contact Lindsey.  And I have in mind when you see your children
20  you probably are well advised to have one of your parents go
21  get them and bring them to you.  You don't go get them and be
22  sitting in the driveway of Lindsey's house.  Do you understand
23  that?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Or your house, whoever it may be.  So
```

```
1   that was part of the method in that idea.  I don't want you
2   around her at all.  If you see her at a school event, you're
3   the one that's got to leave, not her.  Is that clear?
4              THE DEFENDANT:  Yes, Your Honor.
5              THE COURT:  Okay.  One of your parents has to be with
6   you at all times, physically, when you're with your children.
7   Do you understand that?
8              THE DEFENDANT:  Yes, Your Honor.
9              THE COURT:  Okay.  Do you understand kind of what
10  I've done?
11       Do you understand what I've done?
12             MS. BARRY:  Yes, Your Honor.
13             THE COURT:  That's how I'm going to write it up.  You
14  will enforce it predicated on that.  I can't think of anything
15  else to put in there.
16       Mr. Bock, do you have anything?
17             MR. BOCK:  No, Your Honor.
18             THE COURT:  The Court will enter a written order
19  consistent with this bench ruling.  You'll be ordered released.
20  Where did you spend the night last night?
21             THE DEFENDANT:  Grady County Jail.
22             THE COURT:  Did you bring your stuff with you today?
23             THE DEFENDANT:  No, I didn't.
24             THE COURT:  Okay.  What's going to happen is you're
25  going to be taken back to Grady County at the marshal's
```

```
 1   convenience today sometime.  If someone is there to meet you,
 2   you'll be released by Grady County to them with your personal
 3   effects.  If no one is there to meet you at Grady County and
 4   cannot bring you -- take -- be there when you are released, you
 5   will spend the night in Grady County Jail.  And then the
 6   marshal will go get you tomorrow morning and bring you here and
 7   release you from here tomorrow morning.  Do you understand
 8   that?
 9              THE DEFENDANT:  Yes, Your Honor.
10              THE COURT:  Does anybody have any questions about
11   anything?
12       Mr. Bock, I assume somebody will be there.  With that
13   said, the marshal is aware of it, too.  And as to whether or
14   not and when he'll be there, you'll need to talk to him.
15       Anything of record from anybody else?  Any questions?
16              MS. BARRY:  No, Your Honor.
17              MR. BOCK:  No, Your Honor.
18              THE COURT:  Court's in recess subject to call.
19              UNIDENTIFIED FEMALE:  Sir, we have one question.
20              THE COURT:  Okay.  Why don't you ask Mr. Bock.
21              UNIDENTIFIED FEMALE:  Okay.
22              THE COURT:  Or, actually, both the lawyers will be
23   fine and the pretrial -- speak up.  What do you want?
24              UNIDENTIFIED MALE:  Can he go to a baseball --
25              THE COURT:  Sure.
```

```
 1              UNIDENTIFIED MALE:  -- his kids' baseball games if
 2    she's there?
 3              THE COURT:  No.  No.
 4              UNIDENTIFIED MALE:  Is there a distance?
 5              THE COURT:  Well, here we go.
 6              UNIDENTIFIED FEMALE:  Yeah.  See?  No.  No worry.
 7              UNIDENTIFIED MALE:  Okay.  Never mind.  We're good.
 8              UNIDENTIFIED FEMALE:  Yeah.
 9              THE COURT:  You know, we start --
10              UNIDENTIFIED MALE:  We're good.
11              THE COURT:  -- splitting hairs and it's a problem.
12              UNIDENTIFIED MALE:  We're good.
13              THE COURT:  And, you know, I don't know what to tell
14    you.  He's the one under the restrictions.
15              UNIDENTIFIED MALE:  Okay.  We're good.  Thank you.
16              THE COURT:  And if she wants to go to the game
17    without worrying about what he's going to be -- where he's
18    going to be at that game or what's going on -- and I don't know
19    where to draw the line.  Maybe -- I mean, maybe he could sit in
20    the car and not bother her and watch the game.  Is he a coach
21    or an observer?  Well, you know.
22              UNIDENTIFIED FEMALE:  Your Honor, he just takes them
23    to all their sports events.
24              THE COURT:  It would be the same question I have, can
25    he go shopping?  Yeah.  Can he go shopping and run into her at
```

1  the mall and stay there?  No.

2      So, I mean, I hate to be flippant about it, but you come

3  down to the point where you start splitting hairs and asking

4  for distances, and there's no end to it.  He's the one that has

5  the burden to retreat.  He's the one that's not -- doesn't want

6  to ever come to court and see me and say that she's here

7  because she saw him at a baseball game and he wanted to talk to

8  her and she didn't want to.  That's all it's going to take.  It

9  would be the straw that broke the camel's back.

10      He is -- I don't want to preach to him.  I'm not the one

11  that released him initially.  I mean, I'm here for a lot of

12  different reasons, but the bottom line is if there's one thing

13  you better know about me, it's this:  I don't give people two

14  chances.  Now, he's had two chances, but not from me.  If I

15  ever see his face again, the marshals are going to take him and

16  I won't worry about what he's going to do tomorrow.  So that's

17  my attitude.  Real simple.

18      Do you have any other questions, though?

19      Okay.  Court's in recess subject to call.

20          MR. BOCK:  Thank you, Your Honor.

21      (RECORDING CONCLUDED.)

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2          I, Tracy Thompson, Federal Official Realtime Court

3    Reporter, in and for the United States District Court for the

4    Western District of Oklahoma, do hereby certify that pursuant

5    to Section 753, Title 28, United States Code, that the

6    foregoing is a true and correct transcript of the

7    electronically recorded proceedings held in the above-entitled

8    matter to the best of my ability to hear and understand said

9    recording and that the transcript page format is in conformance

10   with the regulations of the Judicial Conference of the United

11   States.

12                         Dated this 18th day of January 2023.

13

14                         /S/ Tracy Thompson
                           -------------------------------
15                         Tracy Thompson, RDR, CRR
                           Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25
```